**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN R. PAUL, JR.,

      Plaintiff,

v.                                                                    Case No. 13-14256
                                                                     Hon. Sean F. Cox
DETROIT EDISON CO., and MICH.
CONSOLIDATED GAS CO. PENSION PLAN

      Defendants.

and

DETROIT EDISON CO., and MICH.
CONSOLIDATED GAS CO. PENSION PLAN,

      Counter-Plaintiffs,

v.

JOHN R. PAUL, JR.

      Counter-Defendant.
_____/

## OPINION AND ORDER

## I. INTRODUCTION

This matter is before the Court on: (1) Plaintiff's Motion to Consider Relevant Union
Contract Issue [Dkt. 13]; (2) Plaintiff's Motion to Consider Relevant Case History and Inclusion
in the Case Summary [Dkt. 14]; (3) Plaintiff's Motion for Summary Judgment [Dkt. 21]; (4)
Defendants' Motion for Summary Judgment [Dkt. 20]; and (5) Plaintiff's Motion to Dismiss
Defendants' Counter Claim [Dkt. 25]. Each motion has been briefed by the parties. The Court
held oral argument on the motions on March 17, 2015, and all parties were in attendance. For

the following reasons, Plaintiff's Motion for Summary Judgment is GRANTED, and the remaining motions are DENIED.

## II.  BACKGROUND

John R. Paul, Jr. ("Plaintiff") was employed by Michigan Consolidated Gas Company ("MichCon") from March 5, 1984 through July 1, 2009.  Plaintiff switched between unionized and non-unionized positions during his employment:

> (1) Plaintiff worked as a "temporary employee" from March 5, 1984 through July 10, 1988.  He was not a participant in any benefit plan sponsored by MichCon during this period;
>
> (2) Plaintiff worked as a "regular employee" from July 11, 1988, through November 23, 1991, during which time he was represented by Local 223 of the Utility Workers Union of America ("Local 223") and accrued years of credited service in the Michigan Consolidated Gas Company Pension Plan (n/k/a the DTE Gas Company Retirement Plan for Employees Covered by Collective Bargaining Agreements) (the "Plan");
>
> (3) Plaintiff worked as a non-union employee from November 24, 1991, through March 28, 1992, during which time he accrued years of credited service under the MCN Energy Group Retirement Plan (n/k/a the DTE Energy Company Retirement Plan) (the "DTE Plan"); and
>
> (4) Plaintiff transferred back to a union position from March 29, 1992, through his retirement on July 1, 2009, during which time he was again represented by Local 223 and resumed accruing years of credited service under the Plan.

*See* Dkt. 20, pp. 2-3.

Plaintiff began considering retirement in late 2007. *See* Mot. Summ. J. Hr'g Tr. 5, Mar. 17, 2015. At that time, Plaintiff requested and received a Pension Calculation Statement estimating his potential retirement benefits from Aon Hewitt, the third-party administrator for the Plan and the DTE Plan.  Plaintiff also received Pension Calculation Statements during the summer of 2008, on April 13, 2009, and at his May 6, 2009 retirement interview.  *See* Mot. Summ. J. Hr'g Tr. 12, 14-16, Mar. 17, 2015.  The "baseline information," such as Plaintiff's

personal identifying information, credited service calculations, and date of hire were identical on all four Pension Calculation Statements. *See* Mot. Summ. J. Hr'g Tr. 8, 12, Mar. 17, 2015. The date of hire listed on the Pension Calculation Statements was March 5, 1984. *See* Mot. Summ. J. Hr'g Tr. 8, 12, Mar. 17, 2015. *See also* Dkt. 20 Ex. 3 p. 2.

At 1:00 p.m. on May 6, 2009, Plaintiff and his wife attended a retirement interview at the Local 223 Union Hall on Commerce Drive in Dearborn, Michigan. *See* Mot. Summ. J. Hr'g Tr. 17-18, Mar. 17, 2015. A company representative acting on behalf of Defendants facilitated the meeting. The company representative brought a series of retirement documents for Plaintiff and his wife, and he reviewed those documents with Plaintiff. *See* Mot. Summ. J. Hr'g Tr. 17, Mar. 17, 2015. A Pension Calculation Statement was among those documents (hereinafter the "Retirement Interview Statement"). *See* Mot. Summ. J. Hr'g Tr. 17-18, Mar. 17, 2015. Plaintiff and the company representative discussed the lump-sum payment and monthly annuity payment that Plaintiff would receive upon retirement. *See* Mot. Summ. J. Hr'g Tr. 24, Mar. 17, 2015. Plaintiff and the company representative also discussed Plaintiff's hire date and the calculation of Plaintiff's years of credited service. Given the union and non-union positions Plaintiff held during his employment, Plaintiff questioned the company representative about the computation of his years of credited service; specifically, Plaintiff questioned what effect the transfers between union and non-union jobs would have on the accrual of his years of credited service. *See* Mot. Summ. J. Hr'g Tr. 18-20, Mar. 17, 2015. The company representative indicated that the information on the Retirement Interview Statement was correct, as Plaintiff's pension was calculated using the March 5, 1984 hire date listed among the baseline information. *See* Mot. Summ. J. Hr'g Tr. 19-20, 22, Mar. 17, 2015. The company representative further explained that, from Plaintiff's original hire date of March 5, 1984, Plaintiff's four pensions would all be

3

bridged together.  *See* Mot. Summ. J. Hr'g Tr. 18-20, 22, Mar. 17, 2015; *See also* Scheduling Conference Tr. 9-10, Apr. 23, 2014; *See also* Dkt. 21, p. 3.

The Retirement Interview Statement indicated that Plaintiff had accrued 23.9701 "Benefit Service (years)."  Dkt. 21, p. 3.  This figure, which was provided on the first page of that statement among the previously mentioned baseline information, was preceded by the following language at the top of the page:

> Your benefit from the MichCon Retirement Plan was calculated based on the information listed below as of April 1, 2009.  Once your calculation data is final, we'll recalculate your benefit and notify you if there is a change.

*Id.*  The cover letter accompanying the Retirement Interview Statement, however, included this language:

> Call the Your Benefits Resources Center if there are any changes in the information on the Pension Calculation Statement that was used to calculate your benefit.  A change in any of the information could cause a difference in the actual benefit you receive.

*See* Dkt. 20 Ex. 2 p. 2.

The company representative also presented Plaintiff and his wife with a MichCon Retirement Plan Pension Election Authorization Form ("Authorization Form") at the retirement interview.  The Authorization Form provided the specific benefits Plaintiff and his wife would receive during his retirement, among them a 70% lump sum payment of $93,169.71, as well as monthly annuity payments in the amount of $772.17, effective July 1, 2009.  Dkt. 20 Ex. 4 p. 3.  These amounts were consistent with those stated in the Retirement Interview Statement.  *See* Mot. Summ. J. Hr'g Tr. 18-20, 22, 24, Mar. 17, 2015.  After reviewing the documents and discussing the aforementioned information with the company representative, Plaintiff and his wife signed the Authorization Form.  *See* Mot. Summ. J. Hr'g Tr. 20, Mar. 17, 2015.  The Authorization Form included this language:

4

> [I certify] that I understand that DTE Energy reserves the right to correct any errors. If it's determined at any time that the information provided on this statement conflicts with the benefit defined by the [Plan], the [Plan] will prevail. Under the law, a plan must be operated in accordance with its terms.

*See* Dkt. 20 Ex. 7 p. 30-34. The company representative witnessed the signatures and took the documents at the conclusion of the meeting. *See* Mot. Summ. J. Hr'g Tr. 24, Mar. 17, 2015.[1]

Plaintiff retired on July 1, 2009, two years prior to when he would have been eligible to receive an unreduced early retirement benefit under the Plan. Sometime during an audit in 2011, Aon Hewitt discovered that the years of credited service used to calculate Plaintiff's pension benefit were overstated by 3.00365 years. Dkt. 20 Ex. 4 p. 2. Plaintiff's benefits had been incorrectly based on 23.9701 years of credited service instead of 20.96645 years. *Id*. According to Defendants, this error was the result of miscalculating Plaintiff's years of credited service earned under the Plan before 2003. *Id.*

Defendants notified Plaintiff of the error in a December 27, 2011 "Overpayment Notice." The Overpayment Notice stated:

> According to our records, you were originally hired as a temporary employee from 3/5/1984 through 7/10/1988. Because you were not a participant in any pension plan during this time, this period of employment is not added to your total years of credited service.

*Id.* The Overpayment Notice stated that Plaintiff's monthly annuity would be reduced by $54.42 per month, and that his lump sum payment was overstated by $14,429.36. *Id*. at 3-4. The Overpayment Notice provided Plaintiff with several options for repaying a total of $17,776.35 in excess benefits plus investment earnings. Dkt. 20 Ex. 4 p. 4-5.

---

[1] Defendants do not dispute that Plaintiff and his wife met with a company representative on May 6, 2009, who reviewed Plaintiff's retirement documents with Plaintiff and witnessed the execution of the Authorization Form on behalf of Defendants. *See* Mot. Summ. J. Hr'g Tr. 17, Mar. 17, 2015.

On February 3, 2012, Plaintiff filed a claim objecting to the correction of his benefits under an equitable estoppel argument. Plaintiff's claim stated, in part:

> On 4 separate occasions MichCon provided me with a pension statement[], on all of these statements all the dates were generated by your staff and they all were the same.
>
> This oversight was a result of MichCon's neglect and if this was discovered at the time of my accepting your pension final offer I WOULD NOT HAVE RETIRED, [a]nd worked the additional years to full retirement. This oversight on your part has caused irreparable financial damage. By retiring at age 60 I lost 10% of the MichCon portion of my retirement and two years salary and benefits. Based on your calculations I elected to collect social security two years after I retired, also at a discount. At my retirement briefing your representative said all these figures were correct.
>
> Now two and a half years after I retired you discover that YOU miscalculated my years of service.

Dkt. 20 Ex. 5 p. 2-3.

The DTE Energy Benefit Plan Administration Committee's Designated Representative (the "Designated Representative") denied Plaintiff's claim on May 7, 2012. *See* Dkt. 20 Ex. 7. Plaintiff appealed the Designated Representative's decision on May 10, 2012, again under an equitable estoppel argument. *See* Dkt. 20 Ex. 8. On August 31, 2012, the DTE Energy Plan Qualified Plan Appeals Committee (the "Committee") notified Plaintiff of its decision regarding his appeal of the denial of his claim. The Committee: (a) denied Plaintiff's appeal as it related to the correction of his monthly annuity payment; but (b) reversed the Designated Representative's decision requiring Plaintiff to repay the excess benefits. *See* Dkt. 20 Ex. 12. Therefore, under the Committee's decision, Plaintiff's monthly annuity payment remained $54.42 lower than before the recalculation, however, Plaintiff was not required to repay the excess benefits he received in error. The Committee's decision was conditioned on Plaintiff not seeking payment

of a MichCon Special Lump Sum Severance Benefit in the amount of $6,884.49 before interest, to which he was apparently entitled at the time.

Proceeding pro se, Plaintiff filed this suit in the 33rd District Court in Wyandotte, Michigan, on August 30, 2013, naming Detroit Edison Co. ("DTE") and the Plan as Defendants. In his complaint, Plaintiff alleged that DTE modified his retirement agreement two years after he retired and without his consent. *See* Dkt. 1. Ex. 1 p. 3. Plaintiff seeks the payment of all monies owed to him, as well as $25,000.00 in costs and damages. On October 7, 2013, Defendants removed this matter to this Court on the basis of federal question jurisdiction. On October 31, 2013, Defendant-Plan filed a counterclaim under which it seeks from Plaintiff the repayment of the overstated initial lump sum payment of $14,429.36. *See* Dkt. 7 p. 7-9.

Plaintiff and Defendants respectively seek summary judgment under Fed. R. Civ. P. 56. Plaintiff also filed: (1) a motion to consider relevant union contract; (2) a motion to consider relevant case history; and (3) a motion to dismiss Defendants' counter-claim.

### III. PLAINTIFF'S MOTION TO CONSIDER RELEVENT UNION CONTRACT

Plaintiff requests that the Court consider a portion of the "relevant union contract . . . not included in current case summary in force at the time of Plaintiff's retirement." Dkt. 13 p. 1. Specifically, he requests that the Court include in the administrative record a portion of the "gas addendum to the union contract and relevant section (early retirement factor and early retirement date) relating to page 000072 of the current administrative record." *Id.* at 2.

The Court finds that the specific portion of the union contract and verbatim language Plaintiff seeks to add is already included in the administrative record. *See* Dkt. 20, Ex. 19, p. 228. Therefore, Plaintiff's request is moot because the document Plaintiff wishes to include is

already in the record.  Accordingly, Plaintiff's Motion to Consider Relevant Union Contract [Dkt. 13] is denied as moot.

### IV.  PLAINTIFF'S MOTION TO CONSIDER RELEVANT CASE HISTORY AND INCLUSION IN THE CASE SUMMARY

Plaintiff seeks to add two exhibits to the administrative record: (1) a copy of the Sixth Circuit Court of Appeals' decision in *Bloemker v. Local 265*, 605 F.3d 436 (6th Cir. 2010), in which that Court held that a pension plan participant may pursue an equitable estoppel claim under ERISA; and (2) a document titled "Early Retirement Pension Benefits—Participant's Right to Sue When Plan Attempts to Change Promised Benefit."  Plaintiff characterizes the second document as "a brief summary of comparisons and similarities to the Plaintiff's case." Dkt. 14 p. 2.  Defendants respond that neither the *Bloemker* decision nor the accompanying analysis should be included in the administrative record because neither was considered by the Committee in rendering its decision.

The Court agrees with Defendants.  To the extent Plaintiff seeks to add the exhibits to the administrative record, Plaintiff's request is improper.  To the extent Plaintiff requests that the Court consider his equitable estoppel claim through the lens of *Bloemker* and its progeny, however, that request is moot because the same arguments are raised in Plaintiff's motion for summary judgment, and the Court addresses those arguments below.  Accordingly, Plaintiff's Motion to Consider Relevant Case History and Inclusion in the Case Summary [Dkt. 14] is denied.

### V.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

#### A.  STANDARD OF REVIEW

Defendants rely on *Schwalm v. Guardian Life Ins. Co. of America* for the proposition that, because the Plan grants discretionary authority to the Plan Administrator to interpret the

terms of the Plan and determine eligibility for and entitlement to benefits, the deferential "arbitrary and capricious" standard of review applies to Plaintiff's claim.  626 F.3d 299, 308 (6th Cir. 2010).  Under that standard, the Court would review the Plan and the administrative record to determine whether a rational decision was made.  *Id*.  The Court disagrees.

Plaintiff does not challenge the plan administrator's interpretation of the ERISA plan; rather, Plaintiff brings a common law claim that the Plan should be estopped from enforcing the terms of the Plan.  Plaintiff's estoppel claim is not based solely on the administrative record and may require the Court to consider material outside the administrative record.  *See Spiewacki v. Ford Motor Co.*, 18 F.Supp.3d. 902, 906 (N.D. Ohio, 2014) (citing *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)); *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006) ("Claims for breaches of fiduciary duty and promissory estoppel are not claims for denial of benefits and are therefore addressed in the first instance in the district court, requiring no deference to any administrator's action or decision.")  Accordingly, the Court finds it appropriate to review the cross-motions under the summary judgment standard.

 "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323.  The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## B. LEGAL BACKGROUND

Equitable estoppel "precludes a party from exercising contractual rights because of his own inequitable conduct toward the party asserting the estoppel. *Bloemker*, 605 F.3d at 443-44. (internal quotation marks omitted).  "Equitable estoppel operates to place the person entitled to its benefit in the same position he would have been in had the representations been true."

*CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1880 (2011) (internal quotation marks and citation omitted).  In the Sixth Circuit, the traditional elements of an equitable estoppel claim are:

> 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Bloemker*, 605 F.3d at 442.  In the Sixth Circuit, an equitable estoppel claim may be invoked in the case of an unambiguous pension-plan provision if the Plaintiff can demonstrate the above-referenced traditional elements of equitable estoppel, plus:

> (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

*Id*. at 444.

## C. ANALYSIS

Plaintiff claims he made retirement decisions in reliance on the written Pension Calculation Statements provided by Defendants and the assurances Defendants' company representative made at the retirement interview that the years of credited service represented on the Retirement Interview Statement were properly calculated and accurate.

### 1. *Traditional Equitable Estoppel Elements*

### a. **Representation of Material Fact**

The first element of Plaintiff's equitable estoppel claim is that Defendants made a representation of material fact.  "A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire."  *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449

(6th Cir. 2002) (internal quotation marks and citation omitted). The Court finds that Plaintiff was misled when Defendants' representative assured Plaintiff that: (1) the years of credited service calculations on the Retirement Interview Statement were correct; and (2) Plaintiff's various pensions would be bridged together beginning from his March 5, 1984 hire date. Plaintiff relied on these misrepresentations when he decided to retire, effective July 1, 2009. *See* Mot. Summ. J. Hr'g Tr. 23, Mar. 17, 2015. Accordingly, the Court finds that Plaintiff demonstrated the first traditional element of equitable estoppel.

### b. Awareness of True Facts by Defendants

The second estoppel element requires Plaintiff to demonstrate that Defendants were aware of the true facts. To satisfy this element, Plaintiff must show that Defendants' "actions contained an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud." *Bloemker*, 605 F.3d at 443 (internal quotation marks, alteration, and citations omitted). Defendants argue that the instant matter is similar to *Stark v. Mars, Inc.*, a case in which a district court found there was no intent by the plan to deceive the beneficiary, but that the person responsible for calculating the benefits made an honest mistake. 879 F.Supp.2d 752, 762-64 (S.D. Ohio 2012), *aff'd*, 518 F. App'x 477 (6th Cir. 2013). As in *Stark*, Defendants claim there is no evidence that: (1) the miscalculation in this case was anything but an error; or (2) Defendants knew about the error before the audit in 2011.

The Court finds that what transpired in this case was more complicated than the "honest mistake" in *Stark*. Cognizant that the different union and non-union positions Plaintiff held during his employment complicated the calculation of his years of credited service, Plaintiff sought clarification of those calculations from the company representative at the retirement interview. The company representative assured Plaintiff that the calculation of his years of

12

credited service was correct. The Overpayment Notice, however, clearly states that the very calculations that the company representative assured Plaintiff were correct at the retirement interview were in fact miscalculated. The Court finds that the company representative's assurances, which were a crucial aspect of Plaintiff's decision to retire effective July 1, 2009, were so grossly negligent as to amount to constructive fraud upon Plaintiff. *See Teisman v. United Omaha Life Ins. Co.*, 908 F.Supp.2d 875, 887 (W.D. Mich. 2013) (holding that a provider's false assurances that a beneficiary's insurance coverage continued may constitute gross negligence); *Krause v. Ohio Operating Engineers*, 2011 WL 1565298, at *4 (S.D. Ohio, Apr. 25, 2011) (finding that "defendant's actions of twice putting in writing and once verbally affirming Plaintiff's eligibility for the health insurance benefits sufficiently alleges intended deception or gross negligence as to amount to constructive fraud."); *Crawford v. Pace Industry Union*, 2014 WL 509475, at *9 (M.D. Tenn., Feb. 7, 2014) (reasoning that Plaintiffs alleged sufficient facts to support the conclusion that the Defendant-Fund's inaccurate representation, which was the "linchpin" of the Plaintiffs' decisions to retire after three decades of work, was so grossly negligent as to amount to constructive fraud upon the Plaintiffs.).

The Court also notes another important distinction between *Stark* and the instant matter. In affirming the district court's judgment in *Stark*, the Sixth Circuit reasoned that the plaintiff failed to show gross negligence because the defendant "properly investigated the exact concern" raised by Plaintiff. 518 F. App'x. 477, 482 (2013). In the instant matter, however, the Court finds that the company representative's failure to properly investigate the concern raised by Plaintiff was not an honest mistake but was precisely the sort of malfeasance that may give rise to constructive fraud. Accordingly, the Court finds that Plaintiff demonstrated the second traditional element of equitable estoppel.

13

### c. Intention that Representation be Acted on

The third estoppel element requires "an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended." *Bloemker*, 605 F.3d at 442 (citation omitted). The company representative met with Plaintiff and his wife, on behalf of Defendants, for the purpose of conducting a retirement interview. The company representative brought the requisite retirement documents, answered Plaintiff's questions regarding those documents, witnessed the execution of the documents, and left with copies of the executed documents for Defendants. The logical implications are that the company representative's conduct was meant to facilitate Plaintiff's retirement, and the company representative fielded Plaintiff's questions with the intention of Plaintiff acting on the representative's assurances. Accordingly, the Court finds that this conduct was sufficient to give Plaintiff a right to believe that Defendants intended him to act upon their representations in deciding to retire, thereby satisfying the third traditional element of equitable estoppel.

### d. Unawareness of True Facts by Plaintiff

The fourth estoppel element requires Plaintiff to demonstrate the he was unaware of the true facts. *Id.* Plaintiff stated that he does not have an understanding of the calculations at issue and that he did not calculate his own retirement benefits. *See* Mot. Summ. J. Hr'g Tr. 23, Mar. 17, 2015. Moreover, Defendants concede that Aon Hewitt made the calculations on behalf of Defendants. *See* Mot. Summ. J. Hr'g Tr. 24, Mar. 17, 2015. Therefore, Plaintiff could not have been aware of the true facts. Accordingly, the Court finds that Plaintiff satisfied the fourth traditional element of equitable estoppel.

14

**e.  Justifiable and Detrimental Reliance**

Finally, the fifth traditional element of equitable estoppel requires Plaintiff to demonstrate that he justifiably and detrimentally relied on Defendants' representations. Plaintiff's communications with Defendants during the pendency of his internal appeal clearly show that Plaintiff detrimentally relied on Defendants' representations.  Plaintiff relied on the four Pension Calculation Statements and the company representative's assurances that the Retirement Interview Statement, the dates on which were identical to the other three Pension Calculation Statements, were accurate, when he decided to retire.  *See* Dkt. 20 Ex. 5 p. 2.  As a result, Plaintiff suffered financial damage when his monthly annuity was reduced (prospectively and retroactively) due to the miscalculated years of credited service represented on the Pension Calculation Statements.[2]  Therefore, the Court finds Plaintiff demonstrated that he suffered an adverse change in position as a result of his reliance on Defendants' representations.

Defendants counter that Plaintiff's reliance on the Pension Calculation Statements was not justified due to the disclaimers provided on the Authorization Form and the Pension Calculation Statements.  *See Stark*, 879 F.Supp.2d at 766 (reasoning that a beneficiary could not have reasonably relied on estimates due to the multiple disclaimers found on the estimates in dispute).  The Court, however, finds *Stark* inapposite.  Unlike *Stark*, the disclaimers in this case are inconsistent with one another.  Although some of the disclaimers in this case provide that Defendants reserved the right to correct errors, the following language appears *on the same page* of the Retirement Interview Statement as the baseline information that the company representative assured Plaintiff was correct:

---

[2] Plaintiff also claims that he relied on Defendants' representations when he elected to collect early, discounted social security benefits.  *See* Dkt. 20 Ex. 5 p. 2.

> Your benefit from the MichCon Retirement Plan was calculated based on the information listed below as of April 1, 2009. Once your calculation data is final, we'll recalculate your benefit and notify you if there is a change.

Dkt. 21, p. 3. Plaintiff, however, was not notified of any change stemming from a final calculation. Rather, Plaintiff received the Overpayment Notice more than two years after retirement.

A second facet of *Stark* is distinct from this case. The plaintiff in *Stark* relied on *Pell v. E.I. Dupont De Nemours & Co. Inc.*, 539 F.3d 292 (3d Cir. 2008), in which the court declined to enforce a disclaimer. *See Stark*, 879 F.Supp.2d at 766. In *Pell*, the court concluded that the plaintiff was justified in relying on written communications despite the presence of disclaimer language because a pre-retirement counselor "had set the record straight" as to those communications. *Id.* (quoting *Pell*, 539 F.3d at 302). Rejecting the plaintiff's reliance on *Pell*, the *Stark* court reasoned that:

> unlike *Pell,* this case did not involve what could reasonably be construed as a definitive representation by a pre-investment counselor concerning a critical component of the benefits analysis, Pell's service date. Rather, it would have been clear to plaintiff that [the call center employee] was simply agreeing to send out written "estimates" consisting of printed copies of the benefits calculations plaintiff had already performed on the website, which featured a disclaimer.

*Id*. at 767.

The Court finds that the instant matter is analogous to *Pell*; the company representative's assurances that: (1) the years of credited service calculations on the Retirement Interview Statement were correct, and (2) Plaintiff's various pensions would be bridged together beginning from his March 5, 1984 hire date, were definitive representations concerning critical components of the benefits analysis. Therefore, the Court finds Plaintiff was justified in relying on Defendants' representations. Accordingly, the Court finds that Plaintiff satisfied the fifth traditional element of equitable estoppel.

### 2. *The Additional* Bloemker *Elements*

#### a.  Written Representation

With regard to the first additional *Bloemker* element, the four Pension Calculation Statements provided to Plaintiff by Defendants are written representations.[3]  Therefore, the Court finds that Plaintiff satisfied the first additional *Bloemker* element.  *See Bloemker*, 605 F.3d at 444.

#### b.  Unambiguous Plan Provisions not Allowing for Individual Calculation

The second additional *Bloemker* element—plan provisions which, although unambiguous, do not allow for individual benefit calculation—is also satisfied in this case. Indeed, Defendants concede that the calculations at issue were conducted by Aon Hewitt—an actuarial firm—on Defendants' behalf.  *See* Mot. Summ. J. Hr'g Tr. 23-24, Mar. 17, 2015.  Thus, as in *Bloemker*, it was impossible for Plaintiff to have known that his benefits were miscalculated by simply looking at the unambiguous plan language because those calculations required complex actuarial knowledge.  *See Bloemker*, 605 F.3d at 443.  Therefore, the Court finds that Plaintiff satisfied the second additional *Bloemker* element.

#### c.  Extraordinary Circumstances

Finally, with regard to the third additional *Bloemker* element, the circumstances surrounding Plaintiff's reliance on Defendants' assurances and the subsequent reduction of Plaintiff's benefits are nothing short of extraordinary.  Relying on the written Pension

---

[3] Defendants rely on the Sixth Circuit's decision in *Cataldo v. U.S. Steele* for the proposition that Plaintiff's equitable estoppel claim fails because the Pension Calculation Statements he received were "estimates" rather than certified statements.  *See Cataldo,* 676 F.3d 542 (6th Cir. 2012). Defendants' reliance on *Cataldo* is misplaced.  Despite Defendants' claim otherwise, the *Cataldo* panel rejected the plaintiffs' claims due to their failure to adequately plead the second and fifth traditional elements of equitable estoppel.  *Id.* at 553-54.  Although the question of whether a statement "estimating" a participant's pension benefit is "certified" may be of interest to the Court in some circumstances, *Bloemker* clearly requires "a written representation," not a "certified" copy of a pension statement.  *See Bloemker*, 605 F.3d at 444.

Calculation Statements from Defendants—statements that Defendants' company representative also expressly and personally assured Plaintiff accurately reflected Plaintiff's hire date and years of credited service—Plaintiff elected for early retirement.  Plaintiff received the benefits reflected on those written statements for more than two years before Defendants notified him that, due to an actuarial miscalculation stumbled upon during an audit: (1) Plaintiff's benefits were overstated, (2) Plaintiff's benefits would be permanently reduced, and (3) Plaintiff would be required to pay back the overstated benefits.  These are precisely the extraordinary circumstances that strongly favor the application of estoppel under *Bloemker*.  *See Bloemker*, 605 F.3d at 439, 444 (extraordinary circumstances existed where plaintiff retired in reliance on assurances that he was entitled to certain retirement benefits, and received those benefits for almost two years, before he was informed that his benefits would be reduced and he would be required to pay the overstated difference); *see also Pell*, 539 F.3d at 304-05 (concluding that a plaintiff's diligence in asking pertinent questions about his benefits in conjunction with an employer's affirmative misrepresentations constituted extraordinary circumstances).  Accordingly, the Court finds that Plaintiff satisfied the third additional *Bloemker* element.

### 3. Conclusion

Because the Court found that Plaintiff satisfied the requisite elements of equitable estoppel in an ERISA context, the Court will (a) grant Plaintiff's Motion for Summary Judgment [Dkt. 21], and (b) deny Defendants' Motion for Summary Judgment [Dkt. 20].  Moreover, the Defendants shall be estopped from reducing Plaintiff's retirement benefits and shall return Plaintiff to "the same position he would have been in had the representations been true."  *CIGNA Corp.*, 131 S.Ct. at 1880 (2011) (internal quotation marks and citation omitted).

## VI. PLAINTIFF'S MOTION TO DISMISS "DEFENDANTS' COUNTER-CLAIM"

Plaintiff requests that the Court dismiss "Defendants' counterclaim dated September 10, 2014" as untimely.   Dkt. 25.   Defendants counter that their September 10, 2014 filing—their reply supporting their motion for summary judgment—was timely pursuant to the Court's April 25, 2014 briefing order [Dkt. 12].   Defendants further argue that Plaintiff's motion is inaccurate, itself untimely, and request that the Court strike the motion from the record.

The Court agrees with Defendants.   Plaintiff's "motion to dismiss" is actually a motion to strike Defendants' Reply Supporting Their Motion for Summary Judgment.   Defendants' Reply was timely under the Court's briefing order.   Therefore, the Court will deny Plaintiff's motion to dismiss Defendants' counter-claim [Dkt. 25] for the reasons stated above.

## VII. DEFENDANT-PLAN'S COUNTERCLAIM

In its counterclaim, the Plan seeks the return of the overpaid lump sum benefit initially received by Plaintiff.   Plaintiff contends that the Committee's decision on appeal to not require Plaintiff to repay the excess benefits was conditioned on Plaintiff not claiming the MichCon Special Lump Sum Severance Benefit to which Plaintiff was entitled.   In his complaint, Plaintiff demanded "all monies owed" to him, which the Plan interpreted as including a demand for the MichCon Special Lump Sum Severance Benefit.   Based on this interpretation, the Plan withdrew the Committee's decision to not require Plaintiff to repay the excess lump sum amount and seeks repayment of the $14,429.36 of overpaid benefits by which the lump sum amount paid to Plaintiff exceeded the amount payable under the terms of the Plan.

The Plan's counterclaim merely seeks repayment of the excess lump sum paid to Plaintiff as a result of Defendants' miscalculations.   Because the Court concluded that Defendants shall be estopped from reducing Plaintiff's retirement benefits and must therefore return Plaintiff to

"the same position he would have been in had the representations been true," the Court will dismiss the Plan's counterclaim. *CIGNA Corp.*, 131 S.Ct. at 1880 (2011) (internal quotation marks and citation omitted).

## VII. CONCLUSION

Accordingly, and for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's Motion to Consider Relevant Union Contract [Dkt. 13] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Consider Relevant Case History and Inclusion in the Case Summary [Dkt. 14] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [Dkt. 21] is GRANTED.  Defendants shall return Plaintiff to the same position he would have been in had the initial calculations been correct.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [Dkt. 20] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Dismiss Defendants' Counter-Claim [Dkt. 25] is DENIED.

IT IS FURTHER ORDERED that Defendant-Plan's Counterclaim is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


Dated:  March 30, 2015                         s/ Sean F. Cox
                                               Sean F. Cox
                                               United States District Judge


I hereby certify that on March 30, 2015, the document above was served on counsel of record via

electronic means and upon John R. Paul, Jr., via First Class Mail at the address below:

John R. Paul, Jr.
20859 Thorofare
Grosse Ile, MI 48138

s/ Jennifer McCoy
Case Manager